**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **GENTRY WILLIAM FREEMAN,** | ) | **CASE NO. 4:10CV369** |
| | ) | |
| **Petitioner,** | ) | |
| | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| **v.** | ) | |
| | ) | **MAGISTRATE JUDGE GREG WHITE** |
| **RICHARD GANSHEIMER, Warden,** | ) | |
| | ) | |
| **Respondent.** | ) | **REPORT AND RECOMMENDATION** |

Petitioner, Gentry William Freeman ("Freeman"), through counsel, challenges the constitutionality of his sentence in the case of *State v. Gentry William Freeman*, Trumbull County Court of Common Pleas Case No. 2002-CR-282.  Freeman filed his Petition for Writ of Habeas Corpus (Doc. No. 1) pursuant to 28 U.S.C. § 2254 on February 18, 2010.  On April 23, 2010, Warden Richard Gansheimer ("Respondent") filed his Answer/Return of Writ.  (Doc. No. 5.)  Freeman filed a Traverse (Doc. No. 7), to which Respondent replied.  (Doc. No. 8.)  The matter is before this Court pursuant to Local Rule 72.2.  For reasons set forth in detail below, it is recommended that Freeman's Petition be dismissed as time-barred.

### I.  Procedural History

In May 2002, the Trumbull County Grand Jury charged Freeman with two counts of Aggravated Murder and one count of Kidnapping.  (Doc. No. 5-1, Exh. 1.)  At a change of plea hearing held on December 9, 2003, one count of aggravated murder was reduced to voluntary manslaughter and the second was dismissed.  Freeman, through counsel, executed a plea agreement, waiving his constitutional rights.  (Doc. No. 5-1, Exh. 7.)  The agreement set forth the nature of the charges and the maximum penalties, as well as notice that mandatory postrelease control supervision was part of his sentence.  *Id*.  Freeman also agreed to two consecutive eight-year prison terms.  *Id.*  The court, after accepting Freeman's plea, proceeded to

sentence Freeman to the recommended sixteen-year term of incarceration.  (Doc. No. 5-1, Exh. 8.)  On December 17, 2003, the sentencing entry was journalized.  *Id.*

### B. Direct Appeal

Freeman did not timely appeal his conviction to the Eighth District Court of Appeals ("state appellate court").  Instead, on May 19, 2004, Freeman, *pro se*, filed a motion for leave to file a delayed appeal.  (Doc. No. 5-1, Exh. 10.)  On August 27, 2004, the court granted Freeman's motion and appointed counsel to represent him.  (Doc. No. 5-1, Exh. 11.)  Freeman raised four assignments of error:

> 1. The trial court erred to the prejudice of Defendant-Appellant by meting out separate, consecutive prison sentences for the offenses of voluntary manslaughter and kidnapping when such crimes constituted allied offenses of similar import under the facts of this case, thereby violating the R.C. 2941.25 statutory codification of the double jeopardy clause proscription against multiple punishments for the same criminal conduct.
>
> 2. The State deprived Defendant-Appellant of due process of law by unilaterally changing the nature and identity of the kidnapping count which had been formally indicted by the grand jury with no subsequent request for an amendment thereof, thereby opening up the door for appellant to be convicted of a kidnapping offense for which he was never charged.
>
> 3. Defendant-Appellant was denied the effective assistance of trial counsel as guaranteed by the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution.
>
> 4. The trial court erred to the prejudice of Defendant-Appellant by imposing consecutive sentences under R.C. 2929.14(E) without stating its underlying reasons and justifications for doing so on the record in open court in direct violation of R.C. 2929.19(B)(2) *State v. Comer* (2003), 99 Ohio St.3d 463.

(Doc. No. 5-1, Exh. 12.)  On February 6, 2006, the state appellate court upheld Freeman's convictions and sentence.  (Doc. No. 5-1, Exh. 14.)

On August 16, 2007, Freeman, through newly retained counsel, moved for leave to file a delayed appeal in the Ohio Supreme Court,[1] (Doc No. 5-1, Exhs. 10-11) which was denied on

---

[1]Freeman, in an affidavit attached to his motion to the Ohio Supreme Court, stated that he did not learn of the state appellate court's ruling "until many months after the decision was rendered."  (Doc. No. 5-1, Tr. 205.)

2

October 3, 2007.  (Doc. No. 5-1, Exhs. 15, 16, 18.)

### C.  Motion to Withdraw Guilty Plea

On December 14, 2009, Freeman, *pro se*, filed a "pre-sentence motion to withdraw guilty plea pursuant to [Ohio] Crim.R. 32.1," alleging he did not enter into the plea agreement knowingly, intelligently, or voluntarily due to the court's failure to advise him of the imposition of postrelease control at his sentencing hearing.  (Doc. No. 5-1, Exh. 19.)  On February 26, 2010, the court denied the motion, but ordered Freeman to be resentenced for the purpose of advising him of his postrelease control sanctions in open court.  (Doc. No. 5-1, Exh. 22.)  On March 23, 2010, Freeman executed a postrelease control notification form.  (Doc. No. 5-1, Exh. 23.)  On April 15, 2010, he was resentenced to the same prison term.  *See* http://www.courts.co.trumbull.oh.us/pa.urd/pamw2000.docket_lst?34318121.  Freeman is presently in the process of appealing this judgment to the state appellate court.[2]

### D.  Federal Habeas Petition

Freeman's Petition for Writ of Habeas Corpus asserts two grounds for relief:

**Ground One:** Defendant may not receive consecutive prison sentences where the record reveals that the offenses involved are allied offenses of similar import under the facts of the case.

**Supporting Facts**: This Court has never ruled on the issue presented in this case as to whether voluntary manslaughter and kidnapping do constitute allied offenses of similar import under appropriate facts. In fact, this Court has not specifically addressed allied offenses of similar import in any context since May of 2000. Appellant respectfully submits that voluntary manslaughter and kidnapping are allied offenses of similar import. In the Decision of the Court of Appeals, the Court stated that, "the appropriate test for determining whether certain crimes are allied offenses of similar import is whether the elements of the crimes correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import."

Voluntary manslaughter is defined in R.C. 2903.03(A) which states that, "[n]o person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death another or the unlawful termination of another's pregnancy."

---

[2]The latest appellate court docket indicated that Petitioner's brief, after an extension of time was granted, was due by September 17, 2010.  *See* http://www.courts.co.trumbull.oh.us/pa.urd/pamw2000.docket_lst?88643471

Kidnapping is defined under R.C. 2905.01(A)(5):

(A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:

(1) To hold for ransom, or as a shield or hostage;

(2) To facilitate the commission of any felony or flight thereafter;

Here, Appellant was only convicted of voluntary manslaughter and kidnapping. It is clear that the facts of this case do not show separate animus of any kind between the two crimes. Voluntary manslaughter cannot be committed without violating the elements of kidnapping. Further, it is impossible to kill someone without restraining his or her liberty to a certain degree. Because the elements of kidnapping are violated in commission of voluntary manslaughter, the two crimes are allied offenses of similar import.

**Ground Two**: A defendant is denied his Sixth Amendment guarantee to effective assistance of trial counsel when the facts reveal that trial counsel did not properly object to a defendant receiving consecutive sentences.

**Supporting Facts**: In this case, Appellant's trial counsel's failure to object to Appellant receiving consecutive sentences for the allied offenses of similar import clearly prejudiced Appellant. Appellant received eight years for each offense for a total of sixteen years. Appellant should have not received consecutive sentences for the allied offenses and one cannot say that serving an extra eight years in prison is *de minimus*. It is reasonable that appellant would not have signed a guilty plea if he knew that receiving consecutive sentences for the allied offenses of similar import was unconstitutional. Therefore, trial counsel should have objected to it and trial counsel's failure to do so prejudiced Appellant. Trial counsel's failure to object to consecutive sentences constituted deficient representation and a clear violation of Appellant's Sixth Amendment right to effective assistance of counsel.

(Doc. No. 1 at 26-29.)

Respondent argues that Freeman's grounds for relief are barred by the statute of limitations, procedurally defaulted, or without merit. Freeman's Traverse, however, primarily addresses the merits issue, with only one paragraph addressing procedural default. (Doc. No. 7 at 5.) The statute of limitations argument is not addressed.

## II.  Statute of Limitations

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. In AEDPA, Congress enacted a period of limitations for the filing of habeas petitions. The statute provides, in relevant part:

(d)(1) A one year period of limitations shall apply to the filing of an application for a writ of habeas corpus by a person in custody pursuant to the

4

judgment of a State court.  The limitation period shall run from the latest of-

>  (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

>  (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

>  (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

>  (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

> (2) the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1), (2).

Respondent contends Freeman's Petition is time-barred as his conviction and sentence became "final" within the meaning of § 2244(d)(1)(A) on January 16, 2004, when the thirty-day period for filing a timely appeal to the state appellate court expired.[3]  *See* Ohio R. App. P. 4(A).  The statute of limitations commenced running one day later on January 17, 2004.  *See* Fed.R.Civ.P. 6(a); *Bronaugh v. Ohio*, 235 F.3d 280, 285 (6th Cir. 2000).  Freeman had one year, until January 17, 2005, to timely file his federal habeas petition.  He did not do so until February 18, 2010.  Therefore, absent an alternate beginning date for the period of limitations, or the applicability of tolling provisions, Freeman's Petition is untimely.

The AEDPA tolls the one-year limitations period during the time "'a properly filed application for State postconviction or other collateral review . . . is pending.' § 2244(d)(2)." *Evans v. Chavis*, 546 U.S. 189, 191 (2006); *Carey v. Saffold*, 536 U.S. 214 (2002); *accord Matthews v. Abramajtys*, 319 F.3d 780, 787 (6th Cir. 2003).  "The time that an application for state postconviction review is 'pending' includes the period between (1) a lower court's adverse

---

[3]The sentencing entry was journalized on December 17, 2003.

5

determination, and (2) the prisoner's filing of a notice of appeal, provided that the filing of the notice of appeal is timely under state law." *Id.*[4]

Only "properly filed" applications for postconviction relief or collateral review toll the statute of limitations, and "a state postconviction petition rejected by the state court as untimely is not 'properly filed' within the meaning of § 2244(d)(2)." *Allen v. Siebert*, 552 U.S. 3, 128 S. Ct. 2, 3 (2007); *Pace v. DiGuglielmo,* 544 U.S. 408, 125 S.Ct. 1807 (2005) ("time limits, no matter their form, are 'filing' conditions, and a state postconviction petition is therefore not 'properly filed' if it was rejected by the state court as untimely")*; Monroe v. Jackson*, 2009 WL 73905, *2, Case No. 2:08cv1168 (S.D. Ohio Jan. 8, 2009). A timely filed state post-conviction matter, however, cannot serve to toll a statute of limitations which has already expired before the motion was filed. *See Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003). Section 2244(d)(2)'s tolling provision "does not ... 'revive' the limitations period (*i.e.*, restart the clock at zero); it can only serve to pause a clock that has not yet fully run. Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations." *Vroman*, 346 F.3d at 602 (citation omitted). Further, if a state court ultimately denies a petition as untimely, that petition was neither properly filed nor pending and a petitioner would not be entitled to statutory tolling. *See Monroe* at *2; *Thorson v. Palmer*, 479 F.3d 643, 645 (9th Cir. 2007).

Freeman filed a delayed appeal with the state appellate court on May 19, 2004, which remained pending until February 6, 2006. This time period tolled, but did not cause the limitations period to begin anew. *See Searcy v. Carter*, 246 F.3d 515, 519 (6th Cir. 2001) *cert. denied*, 534 U.S. 905 (2001); *DiCenzi v. Rose*, 452 F.3d 465, 468 (6th Cir. 2006). Freeman then had 45 days, or until March 23, 2006, in which to file an appeal with the Ohio Supreme Court. *See* Rule II, § 2(A)(1)(a). Freeman did not do so; and, therefore, the statute of limitations resumed on March 24, 2006. Since 122 days had already elapsed, Freeman had 243 days in

---

[4]An application for state habeas review is an application for state post-conviction review or other collateral review within the meaning of the AEDPA. *See Abela v. Martin*, 348 F.3d 164, 170 (6th Cir. 2003), *overruled on other grounds as stated in Sanders v. Bobby*, 2008 U.S. Dist. LEXIS 7248 (N.D. Ohio 2008).

6

which to file his federal habeas petition, absent any further tolling actions.  Freeman filed no other motions during the remaining period.  The statute of limitations, therefore, ran without pause, until it expired on November 21, 2006.  Freeman, after the expiration of the tolling period, on August 16, 2007, filed a motion for delayed appeal with the Ohio Supreme Court, which was denied on October 3, 2007.  Over two years later, Freeman filed a motion to withdraw his guilty plea with the trial court.

During the one-year period beginning January 17, 2004, Freeman was entitled to statutory tolling under § 2244(d)(2) based on any "properly filed" applications for state post-conviction relief or other collateral review.  *See* 28 U.S.C. § 2244(d) (2).  However, once the time period expired, it cannot be revived by the filing of collateral review proceedings.  *Vroman*, 346 F.3d at 601-602 (*quoting Rashid v. Khulman*, 991 F.Supp. 254, 259 (S.D.N.Y. 1998)) ("Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations."); *see also Ringer v. Warden, Warren Correctional Inst.*, 2010 WL 3452337, *4 (S.D. Ohio Jul. 29, 2010).  Freeman's motion for delayed appeal with the Ohio Supreme Court clearly falls into this category as it was not filed until August 16, 2007.  *See Pace,* 544 U.S. at 414 ("When a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)"); *Searcy*, 246 F.3d at 516 ("a petition cannot indefinitely delay the running of the statute of limitations in a federal habeas action by filing a delayed appeal in state court.")  Further, in *Goodballet v. Mack*, 266 F.Supp.2d 702, 705 (N.D. Ohio 2003), the Court ruled that a petitioner's post-sentence motion to withdraw a guilty plea did not reset the limitations period or alter the final conviction date.  The *Goodballet* Court noted that the Ohio Supreme Court determined that a post-sentence motion to withdraw a guilty plea under Ohio R.Crim. P. 32.1, unlike other post-conviction remedies, "is not collateral but is filed in the underlying criminal case."  *State v. Bush*, 96 Ohio St.3d 235, 238, 773 N.E.2d 522, 526 (2002).  Thus, Ohio procedural rules which set forth the filing deadlines for post-conviction relief petitions do not govern post-sentence motions to withdraw guilty pleas.  *Goodballet*, 266 F.Supp.2d at 706.  Nevertheless, the *Goodballet* Court rejected the argument that a conviction does not become "final" for purposes of the AEDPA statute of limitations until after the

7

resolution of the motion to withdraw a guilty plea.  The *Goodballet* Court reasoned as follows:

>    Goodballet correctly notes that the *Bush* court held that Ohio procedural rules prescribing a filing deadline for postconviction relief petitions do not govern postsentence motions to withdraw guilty pleas.  *Bush*, 96 Ohio St.3d at 239, 773 N.E.2d at 526.  However, this state procedural ruling does not reset the federal AEDPA filing deadline nor does it alter the final conviction date for federal habeas petition purposes.  For purposes of the AEDPA, the judgment becomes final upon "the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).  If the conviction did not become final until the highest state court denied a motion to withdraw a guilty plea, the one-year statute of limitations would be meaningless.  A petitioner could indefinitely extend the time for seeking habeas relief merely by delaying his motion to file a motion to withdraw his guilty plea.  The same would be true if the filing of such a motion reset the limitations period.
>
>    Although the Sixth Circuit has not directly addressed whether a motion to withdraw a guilty plea resets the AEDPA limitations period and/or alters the final conviction date, its decisions in two other cases suggest that it does not.  First, the Sixth Circuit held that the filing of a delayed appeal tolls the running of the AEDPA one-year limitation but it does not reset the limitations period.  *Searcy*, 246 F.3d at 519.  A delayed appeal is part of the "direct review" of a case.  *Id.*  Moreover, like a motion to withdraw a guilty plea, a petitioner may file a delayed appeal anytime with the Ohio Supreme Court.  *See* Oh. Sup.Ct. R. II, Sec. 2(4)(a).  Because the party may file the delayed appeal anytime, effectively delaying the final judgment date, the court decided that filing such an appeal may toll the running of the one year limitation, but does not restart the limitation period.  *Searcy*, 246 F.3d at 519.  Specifically, the court reasoned that allowing the filing of a delayed appeal to restart the AEDPA limitations period:

>>    would effectively eviscerate the AEDPA's statute of limitations.  Leave to file a late notice of appeal can be sought at any time, even many years after conviction.  If the one-year period of limitations did not begin to run until such an application for leave to appeal was denied, the one-year statute of limitations would be meaningless; merely by delaying his application for leave to file a late notice of appeal, a petitioner could indefinitely extend the time for seeking habeas relief.  The statute of limitations provision of the AEDPA would thus be effectively eliminated, a clearly unacceptable result.

>    *Id*. (*quoting Raynor v. Dufrain*, 28 F.Supp.2d 896, 898 (S.D.N.Y.1998)).
>
>    Likewise, the Sixth Circuit held that an Ohio R.App. P. 26(B) application, though part of the direct appeal process[5], will not delay the starting of the AEDPA statute

---

[5]After *Goodballet* was decided, the Sixth Circuit in an *en banc* decision overruled prior Sixth Circuit precedents to the extent that Rule 26(B) applications for reopening are no longer considered part of direct review, but rather in accordance with Ohio law, represent a collateral post-conviction remedy that is not part of the original appeal.  *See Lopez v. Wilson*, 426 F.3d 339, 351-52 (6th Cir. 2005) (*en banc*) (and state cases cited therein), *cert. denied*, 547 U.S. 1099, 126 S.Ct. 1880, 164 L.Ed.2d 570 (2006); *see also Morgan v. Eads*, 104 Ohio St.3d 142, 818

of limitations:

> It is important to note that [petitioner] will not be able to benefit from his delay in bringing a Rule 26(B) application to reopen direct appeal by requesting that § 2244(d)(1)(A)'s one-year statute of limitations not begin until after his Rule 26(B) application has run its course through the courts.  Instead, the statute of limitations is tolled only for that period of time in which the Rule 26(B) application is actually pending in the Ohio courts.

*Bronaugh v. Ohio*, 235 F.3d 280, 285 (6th Cir. 2000).

*Goodballet v. Mack,* 266 F.Supp.2d 702, 706 -707 (N.D. Ohio 2003).

Other courts have been persuaded by *Goodballet.  See also Coffey v. Warden*, No. l:06-cv-717, 2007 WL 951619 (S.D. Ohio Mar. 28, 2007) (Dlott, J.; Black, M.J.); *cf. Stephens v. Jackson*, No. C-1-05-243, 2006 WL 840376, at *4-6 (S.D. Ohio Mar. 30, 2006) (Weber, J.; Hogan, M.J.).  Courts similarly have considered motions to withdraw guilty pleas only to the extent they affected the determination as to whether or not the statute of limitations, which had previously commenced running under § 2244(d)(1)(A), was statutorily tolled under 28 U.S.C. § 2244(d)(2).  *See, e.g., Gross v. Kansas*, 194 Fed. Appx. 560, 562 (10th Cir. 2006); *DeFluiter v. Brunsman*, No. 2:06-cv-274, 2006 WL 3751246, at *3 (S.D. Ohio Dec.18, 2006) (Holshuh, J.; Abel, M.J.)

Freeman's motion to withdraw his guilty plea, filed on December 14, 2009, more than three years after the AEDPA limitation period expired, neither tolls the running nor starts it anew.  *See Wells v. Warden, Lebanon Correctional Inst*., 2010 WL 1253499, **3 -5 , Case No. 1:09cv051 (S.D. Ohio Jan 8, 2010).

Freeman does not allege that a state created impediment prevented him from filing or that a newly recognized constitutional right was made retroactively applicable on collateral review. *See* 28 U.S.C. § 2244(d)(1)(B)-(C).  Freeman does argue, however, that he was not timely advised of the appellate court's adverse decision or of his further appeal rights.  The Court, therefore, will address whether 28 U.S.C. § 2244(d)(1)(D) entitles Freeman to a delayed start

---

N.E.2d 1157, 1160-61 (Ohio 2004) (and state cases cited therein).

date based upon facts that could not have been discovered earlier through the exercise of due diligence.  Freeman alleges only that it was several months before he found out about the state appellate court's adverse ruling.  (Doc. No. 5-1, Tr. 205.)  Moreover, he never states when he first became aware of his appellate rights.  Nevertheless, the Sixth Circuit instructs courts to determine when a reasonable person acting with due diligence would have learned of his right to appeal.  *DiCenzi v. Rose*, 452 F.3d 465 (6th Cir 2005); *Moore v. Wilson*, 2009 WL 2399122, *11 (N.D. Ohio Aug. 4, 2009).

It could be argued in this case that Freeman is not entitled to a delayed start date of the limitations period because he did not have a right to appeal his sentence, rendering § 2244(d)(1)(D) inapplicable.  O.R.C. § 2953.08(D)(1) provides that, "[a] sentence imposed upon a defendant is not subject to review under this section if the sentence is authorized by law, has been recommended jointly by the defendant and the prosecution in the case, and is imposed by a sentencing judge."  At the plea hearing, the State indicated that the parties agreed to a recommended sentence of sixteen years, and Freeman acknowledged that agreement.  (Doc. No. 5-2 at 9.)

Nonetheless, if this Court gives Freeman every benefit of the doubt by determining that the statute did not begin to run until the Ohio Supreme Court denied his request for a delayed appeal, nothing excuses his failure to take any further action for over two years.  No application of equitable tolling could save his Petition.  The statute of limitations may be equitably tolled in limited circumstances.  *See Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004).  For equitable tolling to apply, a petitioner must demonstrate:  "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."  *Lawrence v. Florida*, 549 U.S. 327, 336, 127 S.Ct. 1079 (2007) (citation and quotation marks omitted).  Equitable tolling decisions are made on a case-by-case basis.  *Souter v. Jones*, 395 F.3d 577, 588 (6th Cir. 2005).

In *Souter*, the Sixth Circuit held that "equitable tolling of the one-year limitations period based on a credible showing of actual innocence is appropriate."  395 F.3d at 599 (following *Schlup v. Delo*, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1998)) (Petitioner must "support

10

his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. at 298.  The *Souter* Court ruled that "where an otherwise time-barred habeas petitioner can demonstrate that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying constitutional claims." *Souter*, 395 F.3d at 602.  This standard is consistent with "AEDPA's central concern that the merits of concluded criminal proceedings not be revisited in the absence of a strong showing of actual innocence." *Id*. at 600.

Freeman indirectly argues actual innocence as to his kidnapping conviction.[6]  In his first ground for relief he argues that because voluntary manslaughter and kidnapping are allied offenses, he received an improper consecutive sentence.  (Doc. No. 7 at 10.)  This is a far cry from a true actual innocence claim.

As the state appellate court ruled, voluntary manslaughter and kidnapping are not allied offenses of similar import.  *State v. Freeman,* 2006 WL 268768 (Ohio App. 8th Dist. Feb. 3, 2006); *see also State v. Cobbins*, 2004 WL 1576408 (Ohio App. 8th Dist. Jul. 15, 2004).  A defendant may be convicted of both offenses as their elements are different.  *Id*.  Kidnapping requires proof that a defendant restrained a victim's liberty; voluntary manslaughter requires

---

[6]In response to the Warden's procedural default argument, Freeman claims actual innocence as to the kidnapping conviction.  (Doc. No. 7 at 10.)  He contends that the act of kidnapping was incidental to the involuntary manslaughter and that, therefore, his convictions are allied offenses of similar import.  *Id*.  He relies on a police affidavit which states that Freeman chased the victim, punched her, causing her to fall, jumped on top of her, and continued to strike her until he believed she was knocked-out.  (Doc. No. 7 at 9.)

Respondent argues that Freeman's claim of actual innocence concerns legal insufficiency, rather than factual innocence.  In the latter case, new evidence, not presented at trial, must be submitted.  *See Schlup v. Delo*, 513 U.S. at 316.  (Doc. No. 8 at 2.)  Respondent further argues that Freeman has not presented new evidence, as the police affidavit was available when the case was before the trial court, and, therefore, does not meet the *Schlup* standard.  *Id*.

The Court, however, does not reach the procedural default argument.

11

proof that a defendant, while under influence of sudden passion or in sudden fit of rage, knowingly caused a victim's death.  *See* O.R.C. §§ 2903.03(A), 2905.01(A).  The appellate court ruled that "[s]ince voluntary manslaughter and kidnapping are not allied offenses of similar import, the trial court did not err by convicting Freeman of both offenses and ordering the sentences be served consecutively."  *Freeman* at *5.

Freeman entered into a plea agreement in which he acknowledged he was guilty of both voluntary manslaughter and kidnapping in return for the State dismissing more serious charges of aggravated murder.  (Doc. No. 5-2.)  He agreed, along with the State, to a recommended consecutive eight-year terms of incarceration.  *Id.*  Based on the plea agreement, the court was not obligated to make additional findings to justify the sentence.  *See Moore,* 2009 WL 2399122, at *2; *State v. Porterfield*, 106 Ohio St.3d 5, 829 N.E.2d 690, 694 (2005) ("Once a defendant stipulates that a particular sentence is justified, the sentencing  judge no longer needs to independently justify the sentence.")  Assuming *arguendo*, that Freeman could argue actual innocence in spite of his agreement, he has not presented any new reliable evidence that would support his claim.

More importantly, "[w]hen considering a petitioner's assertion that he is innocent, 'the self-inculpatory statements he made under oath at his plea allocution carry a strong presumption of verity, and the court, in reviewing the belated claims of innocence, must draw all permissible inferences in favor of the government and against the defendant.'"  *Logan v. Booker*, 2007 WL 2225887, *4 (E.D. Mich. Aug. 1, 2007) (*quoting Urena v. People of State of New York*, 160 F.Supp.2d 606, 610 (S.D.N.Y. 2001) (*quoting United States v. Maher*, 108 F.3d 1513, 1530 (2d Cir. 1997)); *see also Everard v. United States*, 102 F.3d 763, 766 (6th Cir. 1996) (holding that the mere assertion of innocence, absent support from the record, is insufficient to overturn a guilty plea).  Freeman, in open court, stated he understood the terms of his plea agreement and affirmatively stated he was entering the plea of his own free will.  As there is a strong presumption that Freeman's statements made at the hearing were truthful, he has not demonstrated his innocence.

If a petitioner fails to establish actual innocence under the standard enunciated in *Souter*,

a Court should then examine the five factors outlined in *Dunlap v. United States*, 250 F.3d 1001 (6th Cir. 2001), *cert. denied*, 534 U.S. 1057, 122 S.Ct. 649, 151 L.Ed.2d 566 (2001), to determine whether equitable tolling of the limitations period is appropriate. *See, e.g., Craig v. White*, 227 Fed. Appx. 480 (6th Cir. 2007); *Harvey v. Jones*, 179 Fed. Appx. 294 (6th Cir. 2006). The factors to consider are as follows:

> (1) petitioner's lack of notice of the filing requirement;
> (2) petitioner's lack of constructive knowledge of the filing requirement;
> (3) petitioner's diligence in pursuing his rights;
> (4) absence of prejudice to the respondent; and
> (5) petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim.

*See Dunlap*, 250 F.3d at 1008 (*citing Andrews v. Orr*, 851 F.2d 146, 151 (6th Cir. 1988)); *see also Sherwood v. Prelesnik*, 579 F.3d at 588 (6th Cir. 2009).  These factors are neither comprehensive nor relevant in all cases.  *Sherwood*, 579 F.3d at 588.  The absence of prejudice to respondent is not an independent basis for invoking the doctrine of equitable tolling.  *Dunlap*, 250 F.3d at 1009; *Andrews*, 851 F.2d at 151 (*citing Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 152, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984)).  The absence of prejudice may only be considered when other factors of the test are met.  *Id*.; *see also Goens v. Warden, Lebanon Corr. Inst.,* 2010 WL 3399335, **3-4  (S.D. Ohio Apr. 14, 2010).

Freeman has not set forth any reason for his delay that would entitle him to equitable tolling under the *Dunlap* standard.  Specifically, the Court notes that Freeman has not alleged or demonstrated a lack of notice of the federal filing requirement or a lack of constructive knowledge of the filing requirement.  Therefore, neither of those prongs are satisfied.  With respect to the third prong, the exercise of diligence in pursuing one's rights, Freeman has not identified or detailed any efforts he undertook to pursue his federal habeas petition, except his claim that, during that period of time, he was saving money to hire an attorney for further appeal.  (Doc. No. 5-1, Tr. 205.)  Turning to the fifth factor, a petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim, the Court again notes that Freeman does not contend that he was unaware of any filing requirement.  Since Freeman has not satisfied his burden under *Dunlap*, equitable tolling is not applicable.

13

In summary, under the one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1)(A), the limitations period ran its course prior to February 18, 2010.  Freeman has not demonstrated that such period is subject to equitable tolling, or that he is actually innocent.  Therefore, the instant federal habeas petition is time-barred.

### III.  Conclusion

For the foregoing reasons, the Court recommends that Freeman's Petition be dismissed.

s/ Greg White
United States Magistrate Judge

Dated:   October 12, 2010

### OBJECTIONS

**Any objection to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See* United States v. Walters, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**

14